1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   HOLLIE M. BURKE,                        No.  2:21-cv-0434 DB

12                  Plaintiff,

13        v.                                 ORDER

14   KILOLO KIJAKAZI, Acting
     Commissioner of Social Security,[1]
15

16                  Defendant.

17

18          This social security action was submitted to the Court without oral argument for ruling on

19   plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2]

20   Plaintiff's motion asserts that the Administrative Law Judge's step two finding, treatment of the

21   lay witness testimony, treatment of the medical opinion evidence, and residual functional capacity

22   determination were erroneous.

23   ////

24

25   [1] After the filing of this action Kilolo Kijakazi was appointed Acting Commissioner of Social
     Security and has, therefore, been substituted as the defendant.  See 42 U.S.C. § 405(g) (referring
26   to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the
     Commissioner shall, in his official capacity, be the proper defendant").
27

28   [2] Both parties have previously consented to Magistrate Judge jurisdiction over this action
     pursuant to 28 U.S.C. § 636(c).  (See ECF No. 24.)

1    For the reasons explained below, plaintiff's motion is granted, the decision of the

2  Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for

3  further proceedings.

4                              **PROCEDURAL BACKGROUND**

5    In March of 2018, plaintiff filed applications for Disability Insurance Benefits ("DIB")

6  under Title II of the Social Security Act ("the Act") and for Supplemental Security Income

7  ("SSI") under Title XVI of the Act alleging disability beginning on September 28, 2016.

8  (Transcript ("Tr.") at 16, 262-73.)  Plaintiff's alleged impairments included ankle injury, anxiety,

9  and depression.  (Id. at 95.)  Plaintiff's applications were denied initially, (id. at 130-34, 139-43),

10  and upon reconsideration.  (Id. at 145-49.)

11    Plaintiff requested an administrative hearing, which was held before an Administrative

12  Law Judge ("ALJ") on July 9, 2020.  (Id. at 34-69.)  Plaintiff was represented by an attorney and

13  testified at the administrative hearing.  (Id. at 34-42.)  In a decision issued on August 13, 2020,

14  the ALJ found that plaintiff was disabled beginning on July 9, 2020.  (Id. at 26.)  The ALJ entered

15  the following findings:

16
17
>    1.  The claimant meets the insured status requirements of the Social
>        Security Act through March 31, 2018.

18
19
>    2.  The claimant has not engaged in substantial gainful activity
>        since the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971
>        *et seq.*).

20
21
22
>    3.  Since the alleged onset date of disability, September 28, 2016,
>        the claimant has had the following severe impairments: status/post
>        surgical repair of left bimalleolar ankle fracture; and complex
>        regional pain syndrome (CRPS) (20 CFR 404.1520(c) and
>        416.920(c)).

23
24
25
>    4.  Since September 28, 2016, the claimant has not had an
>        impairment or combination of impairments that meets or medically
>        equals the severity of one of the listed impairments in 20 CFR Part
>        404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,
>        404.1526, 416.920(d), 416.925 and 416.926).

26
27
28
>    5.  After careful consideration of the entire record, the undersigned
>        finds that since September 28, 2016, the claimant has the residual
>        functional capacity to perform sedentary work as defined in 20 CFR
>        404.1567(a) and 416.967(a) except: she can occasionally climb
>        ramps and stairs; she can never climb ladders, ropes or scaffolds; she

can occasionally balance, stoop, kneel, crouch, and crawl; and she can occasionally use foot controls.

6.   Since September 28, 2016, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  Prior to the established disability onset date, the claimant was a younger individual age 45-49.  Applying the age categories non-mechanically, and considering the additional adversities in this case, on July 9, 2020, the claimant's age category changed to an individual closely approaching advanced age.  (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Prior to July 9, 2020, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on July 9, 2020, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Prior to July 9, 2020, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.  Beginning on July 9, 2020, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12. The claimant was not disabled prior to July 9, 2020, but became disabled on that date and has continued to be disabled through the date of this decision.  Her disability is expected to last twelve months past the onset date  (20 CFR 404.1520(g) and 416.920(g)).

13.  The claimant was not under a disability within the meaning of the Social Security Act at any time through March 31, 2018, the date last insured (20 CFR 404.315(a) and 404.320(b)).

14.  The claimant's substance use disorder(s) is not a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935).

(Id. at 19-26.)

////

////

On January 21, 2021, the Appeals Council denied plaintiff's request for review of the ALJ's August 13, 2020 decision.  (Id. at 1-5.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on March 10, 2021.  (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)).  If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.

////

4

1    Step five:  Does the claimant have the residual functional capacity to
     perform any other work?  If so, the claimant is not disabled.  If not,
2    the claimant is disabled.

3    Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

4           The claimant bears the burden of proof in the first four steps of the sequential evaluation

5    process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden

6    if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094,

7    1098 (9th Cir. 1999).

8                                        **APPLICATION**

9           Plaintiff's pending motion asserts the following four principal claims of error: (1) the ALJ

10   erred at step two of the sequential evaluation; (2) the ALJ's treatment of the medical opinion

11   evidence was erroneous; (3) the ALJ improperly rejected the lay testimony; and (4) the ALJ's

12   residual functional capacity determination was unexplained.[3]  (Pl.'s MSJ (ECF No. 17) at 6-17.[4])

13   **I.      Step Two Error**

14          Plaintiff argues that the ALJ erred at step two of the sequential evaluation by failing to

15   find that plaintiff's mental impairments were severe.  (Id. at 6-9.)  At step two of the sequential

16   evaluation, the ALJ must determine if the claimant has a medically severe impairment or

17   combination of impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing

18   Yuckert, 482 U.S. at 140-41).  The Commissioner's regulations provide that "[a]n impairment or

19   combination of impairments is not severe if it does not significantly limit [the claimant's]

20   physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a) & 416.921(a).

21   Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those

22   abilities and aptitudes include:  (1) physical functions such as walking, standing, sitting, lifting,

23   and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and

24   remembering simple instructions; (4) use of judgment; (5) responding appropriately to

25   ////

26   _____

27   [3] The Court has reordered plaintiff's claims for sake of clarity and efficiency.

28   [4] Page number citations such as this one are to the page number reflected on the court's CM/ECF
     system and not to page numbers assigned by the parties.

1  supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine

2  work setting.  20 C.F.R. §§ 404.1521(b) & 416.921(b).

3      The Supreme Court has recognized that the Commissioner's "severity regulation increases

4  the efficiency and reliability of the evaluation process by identifying at an early stage those

5  claimants whose medical impairments are so slight that it is unlikely they would be found to be

6  disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S.

7  at 153.  However, the regulation must not be used to prematurely disqualify a claimant.  Id. at 158

8  (O'Connor, J., concurring).  "An impairment or combination of impairments can be found not

9  severe only if the evidence establishes a slight abnormality that has no more than a minimal effect

10  on an individual[']s ability to work." Smolen, 80 F.3d at 1290 (internal quotation marks and

11  citation omitted).

12      "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination

13  of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v.

14  Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28); see

15  also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy step two

16  burden where "none of the medical opinions included a finding of impairment, a diagnosis, or

17  objective test results").  "Step two, then, is 'a de minimis screening device [used] to dispose of

18  groundless claims[.]'" Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290); see also

19  Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis

20  standard"); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal.

21  Feb.11, 2008) (describing claimant's burden at step two as "low").

22      Here, the ALJ opined that plaintiff had "non-severe mental impairments: anxiety and

23  depression," and that the record supported "a finding that these impairments have not caused

24  more than minimal limitation in the ability to perform basic work activities for 12 months."  (Tr.

25  at 19.)  The ALJ did not cite to any evidence in support of this vague and conclusory assertion.

26      Instead, the ALJ's next sentence acknowledged that "treatment records" established that

27  plaintiff had been "diagnosed with depressive disorder/bipolar disorder and anxious mood/anxiety

28  disorder." (Id.)  The ALJ then asserted that those treatment records showed "only sporadically

6

1  reported mental symptoms caused by these impairments." (Id.)  The ALJ then stated another

2  vague and conclusory assertion, that there was "no medical evidence in the record that these

3  impairments, singly or in combination, cause any vocational limitations." (Id.)  Again, no

4  argument or evidence was offered to support this vague and conclusory assertion.

5          Moreover, the ALJ's characterization of the record is wrong.  In this regard, the medical

6  evidence established repeated and consistent instances of mental symptoms causing plaintiff more

7  than minimal limitations.  For example, a June 14, 2017 assessment found plaintiff presenting

8  with "hopelessness, irritability, anxiety, crying spells, fatigue, excessive sleep, feelings of guilt

9  and worthlessness, poor appetite (excessive and loss), isolation, withdrawn, difficulty

10  concentrating, and passive S/I." (Id. at 898.)  It was determined that plaintiff's symptoms

11  interfered with plaintiff's "ability to adequately perform" activities of daily living.  (Id.)

12          A July 18, 2017 treatment record reflected that plaintiff's treatment was designed to

13  "increase days free from depressed mood and fatigue in order to adequately perform" activities of

14  daily living.  (Id. at 908.)  A June 13, 2018 treatment record found that plaintiff was "Anxious,

15  Depressed, (extremely sad, despondent) and was experiencing "symptoms of anxiety and

16  depressed mood." (Id. at 1071.)  Plaintiff was diagnosed with "Major depressive disorder[.]" (Id.

17  at 1073.)

18          A May 14, 2019 treatment record again diagnosed plaintiff with depression, noting that

19  plaintiff was "stable at this time due to ongoing psychiatric treatment." (Id. at 1164.)  On July 16,

20  2019, plaintiff presented with a "stressed" mood and "SHALLOW" affect.  (Id. at 1167.)

21  Plaintiff was again diagnosed with depression.  (Id.)  A July 17, 2019, treatment record stated that

22  plaintiff reported "experiencing symptoms of depression and anxiety." (Id. at 1195.)  Again,

23  plaintiff was diagnosed with "major depressive disorder." (Id. at 1197.)  A February 27, 2020

24  treatment record reflected that plaintiff was "experiencing symptoms of depressed mood, anxious

25  mood, racing thoughts, insomnia, poor concentration, isolation, and suicidal ideation without

26  intent or plan." (Id. at 1418.)  These symptoms made it difficult for plaintiff "to function daily."

27  (Id.)

28  ////

7

These records were consistent with and supported by plaintiff's testimony.  (Id. at 57-58); see generally Burnett v. Raytheon Co. Short Term Disability Basic Ben. Plan, 784 F.Supp.2d 1170, 1184 (C.D. Cal. 2011) ("the unique nature of psychiatric disabilities . . . often involve subjective complaints").  They were also consistent with and supported by the opinion of "state agency psychological" consultant Nicole Robicheau, who opined that plaintiff's mental impairments caused moderate limitations in the ability to understand, remember, or apply information, to interact with others, to concentrate, persist, or maintain pace, and to adapt or manage oneself.  (Id. at 84.)

Moreover, when the ALJ determines the presence of a mental impairment at step two of the sequential evaluation 20 C.F.R. § 404.1520a "requires those reviewing an application for disability to follow a special psychiatric review technique."  Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011).

> Under the special-technique regulation, if the ALJ determines that a mental impairment exists, he "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [his] findings."  [20 C.F.R.] § 404.1520a(b)(1).  The ALJ must also document "a specific finding as to the degree of limitation in each of" the four areas of functional limitation listed in § 404.1520a(c)(3).  Id. § 404.1520a(e)(4).  In the first three areas of functional limitations—(a) activities of daily living, (b) social functioning, and (c) concentration, persistence, or pace—the ALJ must rate the degree of limitation using "the following five-point scale: None, mild, moderate, marked, and extreme."  Id. § 404.1520a(c)(4). The ALJ must rate the fourth functional area—(d) episodes of decompensation—using "the following four-point scale: None, one or two, three, four or more."  Id. Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment.  Id. § 404.1520a(d).  If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities.  See id. § 404.1520a(d)(3).  The regulation specifically provides that the ALJ must document all of the special technique's steps.  Id. § 404.1520a(e)(4).

Patterson v. Commissioner of Social Security Administration, 846 F.3d 656, 659 (4th Cir. 2017).

Here, the ALJ asserted, again in a vague and conclusory manner, that plaintiff had "no limitation" with respect to "the broad areas of functioning set out in the disability regulations[.]" (Tr. at 19.)  The ALJ then attempts to support this finding by vaguely referring to evidence.  In

this regard, the ALJ asserted that "[f]or instance," plaintiff stated she could follow spoken instructions "pretty well," could make "meal daily," drive a car, shop in a store "once a week, up to 20 minutes," etc.  (Id. at 20.)

This type of superficial, cursory, and vague analysis is entirely insufficient for review. See generally Arnett v. Astrue, 676 F.3d 586, 591-92 (7th Cir. 2012) (ALJ must explain "analysis of the evidence with enough detail and clarity to permit meaningful review").  Even if the examples of activity referred to by the ALJ were sufficiently explained—and they are not— reliance on activities such as shopping in a store once a week for 20 minutes or making a meal are problematic for reasons that should be obvious.

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer.  The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).

As noted above, the ALJ's conclusion that the claimant lacks a medically severe impairment or combination of impairments is valid only when that conclusion is "clearly established by medical evidence."  Webb, 433 F.3d at 687.  On this record, the court cannot say that it is clearly established by the medical evidence that plaintiff lacked a medically severe mental impairment.  See Ortiz v. Commissioner of Social Sec., 425 Fed. Appx. 653, 655 (9th Cir. 2011) ("This is not the total absence of objective evidence of severe medical impairment that would permit us to affirm a finding of no disability at step two."); Webb, 433 F.3d at 687 ("Although the medical record paints an incomplete picture of Webb's overall health during the relevant period, it includes evidence of problems sufficient to pass the de minimis threshold of step two."); Russell v. Colvin, 9 F.Supp.3d 1168, 1186-87 (D. Or. 2014) ("On review, the court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Ms. Russell did not have a medically severe impairment or combination of impairments."); cf. Ukolov, 420 F.3d at 1006 ("Because none of the medical opinions included a

////

9

1  finding of impairment, a diagnosis, or objective test results, Ukolov failed to meet his burden of

2  establishing disability.").

3        Nor can the Court find the ALJ's errors harmless.  An error is harmless only if it is

4  "inconsequential" to the ALJ's "ultimate nondisability determination."  Stout v. Comm'r, Soc.

5  Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Molina v. Astrue, 674 F.3d 1104,

6  1115 (9th Cir. 2012) (error harmless if "there remains substantial evidence supporting the ALJ's

7  decision and the error does not negate the validity of the ALJ's ultimate conclusion.").  An ALJ's

8  failure to consider an impairment "severe" at step two is harmless if the ALJ considers all

9  impairments—regardless of severity—in the subsequent steps of the sequential analysis.  See

10  Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (finding step two error harmless as the ALJ

11  specifically discussed plaintiff's bursitis and its effects when identifying the basis for limitations

12  in plaintiff's RFC.  Here—aside from repeatedly rejecting them for the same erroneous reasons

13  discussed above— the ALJ did not consider plaintiff's mental impairments in the subsequent

14  steps of the sequential evaluation.  (Tr. at 23-24.)

15        Accordingly, the Court finds that plaintiff is entitled to summary judgment on the claim

16  that the ALJ erred at step two of the sequential evaluation.

17  **II.      Medical Opinion Evidence**

18        Plaintiff's motion also argues that the ALJ failed to adequately evaluate the medical

19  opinion evidence of Dr. Jeremy Evans.  (Pl.'s MSJ (ECF No. 17) at 14.)  For claims filed prior to

20  March of 2017, Ninth Circuit's precedent established a hierarchy for medical opinions based on

21  the physician's relationship to the plaintiff.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

22  1995) ("Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

23  who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

24  (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

25  physicians).").  In 1991, the Commissioner promulgated regulations consistent with the Ninth

26  Circuit's hierarchy.  See 56 Fed. Reg. 36932-01, 1991 WL 142361 (Aug. 1, 1991).

27        On March 27, 2017, however, revised Social Security Administration regulations went

28  into effect regarding the evaluation of medical opinions.  Pursuant to those regulations, "the

Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" <u>V.W. v. Comm'r of Soc. Sec.</u>, No. 18-cv-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); <u>see also</u> 20 C.F.R. § 404.1520c(a).  In place of specific evidentiary weight, the Commissioner will "evaluate the persuasiveness of medical opinions" based on (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5).

While the ALJ will consider all of the above factors, "the ALJ must explain how he considered the two 'most important factors'—supportability and consistency."  <u>Crystal R. E. v. Kijakazi</u>, Case No. 20-cv-0319 SH, 2022 WL 446023, at *6 (N.D. Okla. Feb. 14, 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)).  Supportability concerns how "relevant the objective medical evidence and supporting explanations presented by a medical source are[.]"  20 C.F.R. § 404.1520c(c)(1).  The more relevant evidence and support presented "the more persuasive the medical opinion[] . . . will be."  (<u>Id.</u>)  With respect to consistency, "[t]he more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources . . . . the more persuasive the medical opinion . . . will be."

In this regard, the new regulations "still require that the ALJ provide a coherent explanation of [her] reasoning," and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court."  <u>Hardy v. Commissioner of Social Security</u>, 554 F.Supp.3d 900, 906 (E.D. Mich. 2021).  Thus,

> [e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.  The agency must "articulate . . . how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability

////

11

1    and consistency factors" in reaching these findings, id §
2    404.1520c(b)(2).

3    Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022)

4        Here, on October 24, 2017, Dr. Evans provided a medical opinion stating that plaintiff had

5    "been under [Dr. Evans'] care since September 2016." (Tr. at 946.) As a result of "a traumatic

6    injury to her left ankle" plaintiff sustained a trimalleollar ankle fracture." (Id.) Plaintiff

7    underwent surgeries on October 14, 2016, December 23, 2016, and January 6, 2017, to correct the

8    injury. (Id.) Although plaintiff's "fractures are now healed," Dr. Evans explained that plaintiff

9    had "developed complex regional pain syndrome, limited ankle joint range of motion,

10   posttraumatic arthritis, and difficulty with ambulation." (Id.)

11       The ALJ acknowledged Dr. Evans' opinion but rejected it as "unpersuasive." (Id. at 23.)

12   In support of this finding the ALJ asserted that Dr. Evans' opinion that plaintiff was disabled was

13   "an issue reserved under the Regulations for the Commissioner," and was "vague and does not

14   contain specific vocational limitations." (Id.) While it is true that the ultimate issue of disability

15   is for the Commissioner, Dr. Evans' opinion did contain specific vocational limitations. The ALJ

16   in fact acknowledged that Dr. Evans' opined that plaintiff could not "stand for more than five

17   minutes in an hour; and cannot walk for more than five minutes in an hour." (Id.)

18       The ALJ also attempted to support the rejection of Dr. Evans' opinion by again relying on

19   the fact that plaintiff can shop "in stores for food once a week, up to 20 minutes, and she makes

20   meals daily, which take up to 30 minutes to prepare." (Id.) Such reliance was wrong for the

21   reasons noted above.

22       Moreover, aside from the vague, conclusory, and entirely unsupported assertion that "the

23   medical evidence of record does not support" the opinion, the ALJ offered no discussion of the

24   supportability or consistency of Dr. Evans' opinion.

25           The regulations are clear and imperative in defining the mode of
             analysis. All medical sources are to be considered, and a rationale
26           articulating how the ALJ applied the factors specified in the
             regulations must be stated for each source. . . . The administrative
27           adjudicator has the obligation in the first instance to show his or her
             work, i.e., to explain in detail how the factors actually were applied
28           in each case, to each medical source.

                                    12

1  Hardy, 554 F.Supp.3d at 909; see also Loucks v. Kijakazi, 21-1749, 2022 WL 2189293, at *2

2  (2nd Cir. 2022) ("the ALJ committed procedural error by failing to explain how it considered the

3  supportability and consistency of medical opinions in the record"); Dogan v. Kijakazi, Civil

4  Action No. 6:21-3291 RMG, 2022 WL 4092461, at *4 (D. S.C. Sept. 7, 2022) ("where . . . there

5  is significant record evidence supporting Plaintiff's claim of disability and the regulation requires

6  the ALJ to consider all of the factors under 404.1520c(c), the Court cannot confirm that this was

7  actually done without the ALJ confirming he considered all five factors set forth in § 404.1520c

8  and explaining how he weighed those factors"); Cooley v. Commissioner of Social Security, 587

9  F.Supp.3d 489, 500 (S.D. Miss. 2021) ("significant gaps exist in the ALJ's discussion of Dr.

10  Tanious' medical opinion that leave this Court unable to build a 'logic bridge' between the

11  evidence and his finding").

12      Accordingly, plaintiff is also entitled to summary judgment on this claim.

13                                        **CONCLUSION**

14      After having found error, "'[t]he decision whether to remand a case for additional

15  evidence, or simply to award benefits[,] is within the discretion of the court.'"[5]  Trevizo v.

16  Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232

17  (9th Cir. 1987)).  A case may be remanded under the "credit-as-true" rule for an award of benefits

18  where:

19          (1) the record has been fully developed and further administrative
            proceedings would serve no useful purpose; (2) the ALJ has failed to
20          provide legally sufficient reasons for rejecting evidence, whether
            claimant testimony or medical opinion; and (3) if the improperly
21          discredited evidence were credited as true, the ALJ would be
            required to find the claimant disabled on remand.
22

23  Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

24  ────────────────
    [5] Having already identified errors requiring remand—and finding that this matter should be
25  remanded for further proceedings—the Court finds it unnecessary to reach plaintiff's remaining
    claims of error.  See Janovich v. Colvin, No. 2:13-cv-0096 DAD, 2014 WL 4370673, at *7 (E.D.
26  Cal. Sept. 2, 2014) ("In light of the analysis and conclusions set forth above, the court need not
    address plaintiff's remaining claims of error."); Manning v. Colvin, No. CV 13-4853 DFM, 2014
27  WL 2002213, at *2 (C.D. Cal. May 15, 2014) ("Because the Court finds that the decision of the
    ALJ must be reversed on the basis of the stooping limitation, the Court need not address
28  Plaintiff's remaining contentions.").

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the nature of the ALJ's errors rendered important evidence unevaluated.  As such, the Court cannot say that further proceedings would serve no useful purpose.  This matter, therefore, will be remanded.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 18) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with this order; and

5.  Plaintiff's September 1, 2021 motion to proceed in forma pauperis (ECF No. 6) is denied as having been rendered moot as a result of plaintiff paying the applicable filing fee.

Dated:  March 23, 2023

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\burke0434.ord